## THOMAS BOYETT v. THE STATE.[1]

1. BILL OF EXCEPTIONS.—Defendant moved to quash a special *venire facias,* alleging several causes, but not so specifying them that this court can determine the particular provisions of law claimed to have been violated; and, his motion being overruled, he took his bill of exceptions, but neither by it or otherwise are brought up to this court the recorded proceedings of the court below relating to the issuance and summons of the special *venire ;* whereas, the judge states in the bill of exceptions that "the record in regard to the jury will show that every provision of the jury law has been strictly complied with." *Held,* that, under such circumstances, the presumption in favor of the ruling must prevail.

2. MURDER—CHARGE OF THE COURT.—In trying an indictment for murder it was not incumbent on the judge to instruct the jury on the law of manslaughter, when the evidence showed the killing to have been a voluntary homicide without adequate cause.

3. MANSLAUGHTER is voluntary homicide, committed under the immediate influence of sudden passion, arising from an adequate cause and not justified or excused by law.

4. SAME—ADEQUATE CAUSE.—Insulting words or gestures, or a slight assault and battery, or an injury to property unaccompanied by violence, are not adequate cause.

APPEAL from the District Court of Bexar. Tried below before the Hon. GEORGE H. NOONAN.

In the motion to quash the special *venire facias* the causes assigned were :

1st. That the writ was not obtained on motion of the prosecuting attorney, nor issued under order of court.

2d. That the jurors under the writ were not summoned in accordance with law.

3d. That the court did not caution the sheriff to summon qualified persons, informing him what the qualifications are.

4th. That the writ contained the names of the persons who were to be summoned, which was not authorized by the law.

5th. That the clerk could not lawfully draw or designate the persons to be summoned.

[1] WHITE, J., did not sit in this case.

6th. That the jurors were not drawn or summoned in accordance with law.

7th. That some of the jurors summoned under the *venire facias* served on the grand-jury by whom the indictment was found.

The motion to quash being overruled, the accused reserved exceptions, but his bill of exceptions did not set forth any facts other than the ruling of the court; whereas the judge, in his certificate to the bill, stated that "the exceptions were taken as above stated, but an inspection of the record in regard to the jury, and the mode of summoning, etc., will show conclusively that every provision of the law in regard to the jury has been strictly observed."

The indictment was returned into court by the grand jury on October 12, 1875. It charged Zach Colbath and the appellant with the murder of Ed Sappington, on September 12, 1875. The appellant, Boyett, was put on trial on October 17, 1876.

Anna Jackson, first witness for the state, testified that Ed Sappington was shot with a gun, and killed, on September 12, 1875, in Bexar county, Texas, in the presence of witness, her sister, Lou, and Bob Jackson, who were all in the same carriage with the deceased. Witness did not know the man who held the gun, but thought it was Colbath. Witness recognizes the prisoner, Boyett, as the old man who rode into the creek, waved his hat in the air, cursed and swore, splashed water upon the occupants of the carriage, and frightened the carriage-horses. He then asked the deceased where he was going, who replied, "It is none of your business." The carriage then drove out of the creek and down Flores street (in San Antonio), towards town. The prisoner rode up to the young man, Colbath, who was on the bank of the creek, and stopped with him. When the carriage got about 100 yards from the creek, the prisoner and Colbath came at a rapid gait and overtook it. The

prisoner came up on the side of the carriage where witness was sitting, and began cursing Sappington, and asked him, "Why did you say it was none of my d——n business?" Sappington replied, "No harm done, is there?" and the prisoner said, "Yes, there is a d——d sight of harm done." Colbath said to Sappington, "Where is Flores street?" and Sappington replied, "You are in Flores street now." Colbath asked Sappington the same question three times, and received the same answer. Then Colbath shot Sappington. The prisoner had, before the shooting, gone round to the other side, where Colbath was. The carriage was going slow. Witness heard Colbath ask where Mr. Nichols lived. The prisoner seemed to be more angry than Colbath. When the gun fired, the prisoner and Colbath were riding side by side and close together. The prisoner could have prevented Colbath from shooting, by taking hold of the gun, but did nothing to prevent it. Neither Sappington nor any other of the occupants of the carriage had any weapons. Witness was sitting by Sappington's side, and was wounded in the leg by the shot which killed him. The moon was shining brightly, and, if the prisoner had thrown up his hands to prevent Colbath from shooting Sappington, witness would certainly have seen him do so, as they were both close to each other and to the carriage.

Bob Jackson, for the state, testified that he was in the carriage when Sappington was shot. The prisoner and Colbath made their appearance at the crossing of the San Pedro creek, as the carriage was coming from the San Pedro springs. The witness then proceeded to give substantially the same account of the homicide as that stated by the preceding witness.

Lou Jackson was also examined by the state. Her testimony concurred in substance with the two previous witnesses, with but slight circumstantial variations.

John Williams, for the state, testified that he witnessed

the shooting when Sappington was killed.    It took place on Flores street, in San Antonio, about 100 yards from the San Pedro crossing.    After the shooting, and when the prisoner and his young companion had got off a short distance, witness heard the prisoner say to the young man, " You have not killed the son of a bitch ; let us go back and kill him ;" and the young man replied, " Yes, I took good aim."

Eliza Walters, for the state, swore that she lived near the San Pedro springs, and was standing at her gate the evening Ed Sappington was shot.    After the shooting, two men came riding rapidly in front of her house, and the old man, who was the prisoner, said to the young one, " Let us go back, you did not kill him ;" and the young man replied, " Yes, I did, I took dead aim on the son of a bitch ; I know I have killed him."    The prisoner then said, " Let us go out and camp until day, and then, when we go back to town, the sheriff won't know us."    They said they would camp on the Three-mile creek.

The state proved that the prisoner and Colbath were arrested, the morning after the shooting, some three miles north of San Antonio, in the prairie.    The prisoner was asked the name of his companion, and replied that it was Tom Henderson, but he was afterwards identified as Zach Colbath.    By Dr. Cupples the state proved that the deceased died September 12, 1875, from the effect of a gunshot wound in the right side.

For the defense, Frank Deitler testified that he lived on Flores street, not far from the San Pedro crossing, and remembered the night Ed Sappington was shot, which occurred near witness' house.    Witness was called to the front of his house that evening by the prisoner and another man.    They asked witness where Mr. Nicholson lived, and witness told them he did not know such a person, and that no such person lived in that part of town.    They

then asked if this was Flores street, and witness told them it was. Just then a carriage drove into the creek from the opposite side, and the prisoner rode into the water to the carriage, and began to talk to the persons in it. Witness heard some one say, " None of your d—d business," or something like that. The carriage drove on towards town, and the prisoner came back to his companion, and they talked together for a minute or two, and then put whip to their horses and rode rapidly after the carriage. In a short time witness heard a shot, and then the prisoner and his companion came back at full speed, and rushed through the creek in the direction of the San Pedro springs. There were no other persons in the street, so far as witness knows.

The jury returned a verdict of murder in the second degree, and gave the appellant eleven years in the penitentiary.

No brief for the appellant has reached the hands of the reporters.

*George McCormick*, Assistant Attorney General, filed a very able argument and brief for the State.

WINKLER, J.    The appellant and one Zach Colbath were jointly indicted for the murder of one Ed Sappington, charged to have been committed in the county of Bexar, on the 12th day of September, A. D. 1875. On the trial a severance was had, and the appellant, being tried separately, was convicted of murder in the second degree, and his punishment assessed by the jury at confinement in the penitentiary for a period of eleven years.

Motions for new trial and in arrest of judgment, in behalf of the accused, were made and overruled, and this appeal has been taken.

The first question presented is raised by a bill of exceptions to the ruling of the court overruling certain exceptions taken by the accused to the special *venire* from which a jury

was selected for the trial of the case, which said exceptions are set out in the transcript.

The bill of exceptions states : " The exceptions were taken as above stated, but an inspection of the record in regard to the jury and the mode of summoning, etc., will show conclusively that every provision of the law in regard to the jury has been strictly observed." This statement must be held sufficient to countervail the objections raised to the *venire*, when the grounds of objection are not so stated as that we can determine the particular provisions of law it is claimed have been violated in organizing the jury. Certainly the statement of the judge, whose province it was to see that a fair trial be had, must outweigh the statements of counsel, whose duty it was to avail himself of every tangible objection to the proceedings being had ; and, in the absence of anything being shown to the contrary, we will indulge a strong presumption in favor, not only of the correctness of the rulings of the judge, but also as to the truthfulness of his statements as to the facts upon which the ruling was based. It is but fair to presume that, if the record as to the jury was not as stated, his statements would have been contradicted by the record, or some excuse would have been offered for not producing it, and it is not claimed, either in the bill of exceptions or in the motion for new trial, that any injury resulted to the accused on account of this ruling of the court.

The 2d bill of exceptions relates to the ruling of the court in refusing a new trial. Looking to the motion for new trial, the 1st ground set out, it will be seen, was the overruling of the exceptions to the special *venire* already considered. The 2d, 3d, and 4th grounds relate to the ruling of the court overruling objections to the introduction of evidence, and referring to bills of exceptions and the statement of facts. From a careful inspection of these we deem the objections not well taken. For all that we can dis-

cover the evidence was properly admitted as bearing upon the issue being tried—namely, the guilt or innocence of the accused. The 5th, 6th, and 7th grounds in the motion for new trial call in question the correctness and sufficiency of the charge of the court in giving to the jury the law of the case.

The 6th ground seems to require more than a passing notice, to wit: " The court erred in not defining the law applicable to manslaughter."

In *Holden* v. *The State*, 1 Texas Ct. of App. 225, after a careful examination of the several provisions of the Code of Criminal Procedure, and of cases determined in the supreme court of the state, bearing upon the subject, it was said :

" From these authorities we conclude, 1st, that, on the trial of a felony case, the judge who presides at the trial is responsible for the law applicable to the particular case then on trial ; 2d, that the court is required to instruct the jury as to the law applicable to that particular case, as developed by the evidence adduced on the trial ; 3d, that it is not indispensable that the court should charge as to different degrees of the offense charged, unless in its judgment the evidence to be passed upon by the jury renders such a charge necessary in order that the jury may understand the application of the facts to the law governing the different degrees of the offense ; though, if after hearing the evidence the court should be in doubt, the law as to the less degree should be charged ; and, 4th, that the failure to instruct the jury as to the different degrees of an offense will not necessarily be ground of reversal, unless this court, on an inspection of the evidence as shown by the record, shall be of opinion that the evidence required the instruction as to the different degrees of the offense."   1 Texas Ct. of App. 237.

There is nothing in the evidence as shown by the state-

ment of facts as embodied in the record, which required a charge on the subject of manslaughter, or to render the charge obnoxious to the objection raised.

Manslaughter is defined to be voluntary homicide, committed under the immediate influence of sudden passion arising from an adequate cause, but neither justified nor excused by law. The expression *under the immediate influence of sudden passion* means, 1st, that the provocation must arise at the time of the commission of the offense, and that the passion is not the result of former provocation ; 2d, the act must be directly caused by the passion arising out of the provocation. It is not enough that the mind is merely agitated by passion arising from some other provocation, or a provocation given by some other person than the party killed ; and, 3d, the passion intended is either of the emotions of the mind, known as anger, rage, sudden resentment, or terror, rendering it incapable of cool reflection.

The expression *adequate cause* means such as would commonly produce a degree of anger, rage, resentment, or terror, in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. Insulting words or gestures, or an assault and battery so slight as to show no intention to inflict pain or injury, or an injury to property unaccompanied by violence are not adequate causes. Penal Code, Arts. 594–598. (Pasc. Dig., Art. 2250 *et seq.*)

The provocation, if any is shown, as we gather from the evidence, amounts to about this : That the deceased, on being asked where he was going, replied, " It is none of your business," or, as some of the witnesses say, " It is none of your d—d business," which, putting it in the strongest light, would not have justified a simple assault, and much less would it amount to a sufficient excuse for taking life, or even reducing the killing from murder to manslaughter.

With reference to the other grounds of objection to the

·charge of the court, as set out in the motion for new trial and in bills of exception, they are equally untenable. The charge, taken as a whole, is a correct and clear statement of the law applicable to the case, as made by the evidence, ·and giving to the accused the full benefit of the legal presumptions of innocence and the reasonable doubt, and also as to what acts will render those participating in the commission of crime liable as principal offenders. The only special instruction asked on the part of the accused was given.

Another bill of exceptions was taken as to the ruling of the court overruling the motion in arrest of judgment. The grounds of the motion are the following:

1st. The indictment presents no offense against the laws of the state of Texas.

2d. The indictment is not in plain and intelligible words.

3d. Because there was no legal jury in said cause.

4th. Because the jury was not summoned in accordance with law.

This motion is not sustained by the record, if it is an ·offense against the laws of the state of Texas to wantonly, and without provocation or excuse, take the life of an unoffending human being.

The appellant seems to have been defended with zeal and ability on the trial below. The case as shown by the record has been examined with the care the occasion requires; yet we are constrained to say that we see no cause to disturb the verdict and judgment rendered herein.

A careful examination of the record leaves us no room to doubt that the accused was tried by an impartial jury, upon a sufficient indictment, before a court of competent jurisdiction, who gave the case a patient hearing, and wherein the law was clearly and ably given in the charge to the jury. He was convicted upon an abundance of legal evidence, identifying him as a participant in the perpetration of an

atrocious crime, and the punishment affixed by the verdict and judgment was fully warranted by the evidence. The law has been applied in letter and spirit, and the judgment will not be disturbed. The judgment of the court below is affirmed.

*Affirmed.*